UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JAN CLARK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 3:24-cv-00825** |
| ) | |
| **RESTAURANT GROWTH SERVICES,** ) | |
| **LLC D/B/A O'CHARLEY'S** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION**</u>

This action arises from Restaurant Growth Services, LLC's ("Defendant") termination of Jan Clark ("Clark" or "Plaintiff") as service manager in one of Defendant's restaurants. Clark filed a complaint alleging violations of the Family and Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act ("ADEA") and the Tennessee Human Rights Act ("THRA"). Specifically, Clark brings retaliation and interference claims under the FMLA as well as age discrimination claims under the ADEA and THRA.[1] Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 20, "Motion"), to which Clark has filed an Opposition (Doc. No. 29), and Defendant has filed a Reply (Doc. No. 35). For the following reason, the Motion will be granted in part and denied in part.

---

[1] The Complaint (Doc. No. 1) also alleged disability discrimination under the ADA and THRA, but Clark has withdrawn these claims in her Opposition. (*See* Doc. No. 29 at 1 n.1).

# I.    BACKGROUND AND UNDISPUTED FACTS [2]

Defendant is a Delaware limited liability company, doing business as O'Charley's and operating numerous restaurants, including in Middle Tennessee. (See Doc. No. 1 ¶ 2). Clark is a former employee of Defendant, who was 64 years old at the time she filed the complaint. (Id. ¶ 6). Defendant hired Clark as a service manager on March 5, 2008. (Doc. No. 34 ¶ 1). The duties of a service manager include: "managing the customer-facing employees at the restaurant, making sure guests are satisfied, making sure staff is knowledgeable in order to take care of guests, maintaining O'Charley's, standards with respect to food quality, cleanliness, and sanitation, and following O'Charley's policies and procedures." (Id. ¶ 2). Clark worked at multiple restaurants, including at the Hermitage, TN, location for the five years preceding this lawsuit. (Id. ¶ 4). Service managers report directly to the general manager of the restaurant in which they work. (Id. ¶ 7). At all times relevant, the general manager of the Hermitage location was Floradine Chaney ("Chaney"), who is approximately 30 years younger than Clark. (Id.; Doc. No. 36 ¶ 4). Chaney reported directly to Defendant's Area Director, who at all relevant times was Alicia Ash. (Id.). Defendant's Director of Human Resources during the relevant time period was Lee Rathbun ("Rathbun"). (Doc. No. 36 ¶ 3).

In March of 2022, Clark's father, with whom she was close, passed away. (Id. ¶ 6; Doc. No. 34 ¶ 9). In September of 2022, Clark's husband of nearly 46 years passed away, after which Clark took a month of bereavement leave. (Id. ¶ 7; Doc. No. 34 ¶ 7). It was difficult for Clark to return to work, and the parties dispute whether her grief impacted her performance. (Compare Id.,

---

[2] The undisputed facts in this section are drawn from the undisputed or not-truly-in-dispute portions of the parties' statements of material facts and responses thereto (Doc. No. 34; Doc. No. 36), the exhibits and depositions submitted in connection with the briefing on the Motion, and uncontroverted portions of the Complaint (Doc. No. 1) that are not contradicted by the evidence in the record.

2

with Doc. No. 34 ¶ 11). Clark acknowledges that issues of communication arose between her and younger team members. (See id. ¶ 5; Doc. No. 34 ¶ 13). Towards the end of 2022, Clark injured her rotator cuff and took FMLA leave from February 24, 2023, to April 7, 2023, for surgery. (Doc. No. 34 ¶¶ 21–22). When Clark returned from her leave, she had limited mobility and had to wear a sling, which Defendant accommodated. (See id. ¶ 23).

Defendant conducts performance reviews of its managerial employees on a quarterly basis, grading managers on a scale of one to three in various categories. (Id. ¶ 24). In April 2023, after Clark's return from her FMLA leave, Chaney conducted Clark's quarterly performance review, grading her performance a two out of three for both performance and potential. (See id. ¶¶ 9–11; Doc. No. 34 ¶¶ 8, 15). On May 17, 2023, Clark notified Defendant that she needed additional surgery and that she would take another FMLA leave beginning June 19, 2023. (Doc. No. 34 ¶ 25). Defendant approved Clark's second leave. (Id.). On June 18, 2023, a day before Clark's second FMLA leave, Chaney and Ash delivered a performance-improvement plan ("PIP") to Clark and discussed its contents with her. (Doc. No. 34 ¶ 18). The PIP was Ash's idea, and Ash drafted it. (Doc. No. 36 ¶ 22). The PIP identified "need for improvement" in three areas: "[s]taffing, [s]ystems, and [p]eople." (Doc. No. 34 ¶ 19). Specifically, the PIP pointed to:

> (1) a staffing 'crisis' with a failure on Plaintiff's part to follow up on applications and postings for hiring ads, ensure timely completion of scheduling, and training; (2) failure to follow O'Charley's established systems, which led to guest complaints, uncompleted tasks, and poor EcoSure scores; and (3) concerns about how Plaintiff spoke to team members and reacted to situations at work.

(Id. (citing Doc. No. 23-7)). Plaintiff took her second FMLA leave from June 19, 2023, through July 31, 2023. (Doc. No. 36 ¶ 27).

Defendant's employee handbook contains a "progressive disciplinary policy," which includes two steps of warnings/coaching before termination. (Doc. No. 36 ¶ 14). Plaintiff's file

did not mention any performance issues leading up to the PIP, other than her quarterly performance review from April 2023. (See id. ¶ 18).[3] However, Chaney testified during her deposition that there had been "one verbal coaching session with Clark regarding her tone with [t]eam [m]embers." (Id. ¶ 22). Chaney also described her working relationship with Clark as "decent," but stated that Clark's FMLA leaves negatively impacted the restaurant's performance and her own. (Id.; Doc. No. 33-4 at 10).

Chaney was the general manager of Hermitage restaurant at the time Clark left for her second leave. (Id. ¶ 27). While Clark was on her second FMLA leave, Defendant closed two nearby restaurants. (Id.; Doc. No. 34 ¶ 28). Defendant transferred the general manager—a former general manager of the year—from one of these restaurants to the Hermitage location and demoted Chaney to Service Manager, which was Clark's position. (Id. ¶¶ 27–28, 34). During her deposition, Chaney testified that she received the option of joining another location, entering into a severance agreement, or stepping down into Clark's position. (Id. ¶ 28 (citing Doc. No. 33-4 at 6–7)). The parties dispute whether Defendant made the decision to replace Clark with Chaney during Clark's leave or after Clark returned. (See id. ¶ 29).

On July 9, 2023, Ash completed Clark's second quarterly performance review, scoring Clark a one out of three on performance and potential, adding "[c]urrently on [leave of absence]. PIP communicated before leave." (Id. ¶ 25). On July 29, 2023, before returning to work from her second FMLA leave, Clark submitted a form from her physician, allowing her to return to work as of August 1, 2023, thereby signaling her intent to return to work. (See id. ¶ 31; Doc. No. 34 ¶ 25; see also Doc. No. 23-14 (form)). Clark was subject to restrictions because of her surgery, but

---

[3] The Court infers this from Defendant's response to Clark's statement that her file did not mention other performance issues: "[d]isputed. Plaintiff's [quarterly performance] review was in her personnel file." (See id.).

these restrictions were lesser than those after her first surgery. (Doc. No. 34 ¶ 26). Clark attempted to return to work on August 1, 2023, but the new general manager turned her away and instructed her to wait for a call. (Id. Doc. No. 34 ¶ 39; Doc. No. 36 ¶ 32). When Defendant learned that Clark returned to work, "Rathbun called Ash to discuss whether there were any other open management positions in the area, to which Ash advised there were no[ne]." (Doc. No. 34 ¶ 40). Defendant terminated Clark as of August 6, 2023. (Doc. No. 36 ¶ 35). Clark is the only manager at the Hermitage location that entirely lost her job, as opposed to other managers that accepted a different position with Defendant. (See id. ¶ 36). The parties dispute whether the decision to terminate Clark occurred during her leave or after her (attempted) return. (See e.g., Doc. No. 34 ¶ 36).

There are multiple factual disputes that are material. The parties dispute whether Clark's family losses impacted her work performance in 2023 and whether her performance improved after the first quarterly review. (Id. ¶¶ 11, 16; Doc. No. 36 ¶ 5, 7). The parties also dispute whether the PIP "fell outside of [Defendant's] progressive disciplinary policy." Doc. No. 36 ¶ 16). "There is no documentation regarding the decision-making process" underlying Clark's termination. (Id. ¶ 41). The parties further dispute whether Clark's termination was part of a workforce reduction. (See, e.g., id. ¶¶ 29–30, 35). Out of the 14 managers in the Nashville area impacted by the restaurant closures, Defendant retained 11 and offered severance to three, including Clark. (See id. ¶ 31). Out of those three, two "were on FMLA leave at the time." (Id. ¶ 32). Clark also testified that other employees made remarks and jokes about her age and disability. (Doc. No. 34 ¶ 45–46). Specifically, with respect to her age, Clark testified that Chaney asked her if she could move around without a cane, a former kitchen manager called her a "double ARP," and a bartender called her "granny." (Id.).

## II.    LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (internal citation omitted).  "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (internal citation and quotation marks omitted).  "In response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" Miller v. Maddox, 866 F.3d 386, 389 (6th Cir. 2017) (quoting Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).  The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson, 477 U.S. at 249.  The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

6

## III.   ANALYSIS

### A.  ADEA and THRA Disability Discrimination Claims

Clark has withdrawn her claims for disability discrimination under the ADA and the THRA.  (See Doc. No. 29 at 1 n.1).  Accordingly, the Court will grant summary judgment on these claims.

### B.  ADEA and THRA Age Discrimination Claims

The analytical framework for deciding employment discrimination claims is well known. In the absence of direct evidence (and there is none here), a plaintiff can survive summary judgment by establishing discrimination through indirect or circumstantial evidence under the burden shifting paradigm set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as refined by Texas Dept. of Community Affs. v. Burdine, 450 U.S. 248 (1981).  "Under this framework, the plaintiff must first make out a *prima facie* case of . . . discrimination[.]"  Rogers v. Henry Ford Health Sys., 897 F.3d 763, 772 (6th Cir. 2018).  "Then, 'the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its decision.'"  Id. (quoting Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009)).  "If the employer does so, 'the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual.'"  Upshaw, 576 F.3d at 584.  This analytical framework applies to both ADEA and THRA claims filed in federal court.  See Reed v. Am. Cellular, Inc., 39 F. Supp. 3d 951, 964 (M.D. Tenn. 2014) (citing Scola v. Publix Supermarkets, Inc., 557 F. App'x 458, 463 (6th Cir. 2014)); Pigott v. Battle Ground Acad., 909 F. Supp. 2d 949, 965 (M.D. Tenn. 2012) ("The McDonnell Douglas/Burdine framework governs age discrimination claims lacking direct evidence under the ADEA and THRA.") (citing Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 811 (6th Cir. 2011), and Bender v. Hecht's Dep't Stores, 455 F.3d 612, 620 (6th Cir. 2006)).

7

Here, Defendant argues that it is entitled to summary judgment on the age-discrimination claims because: (1) Clark cannot make out a *prima facie* case of age discrimination; and (2) Defendant terminated Clark for a legitimate, non-discriminatory reason, *i.e.*, a reduction in force. (See Doc. No. 21 at 12–16, 21–23). The Court will address these arguments in turn, using the above analytical framework.

### 1. Prima Facie Case

To establish a prima facie case of age discrimination, a plaintiff must show: "(1) [s]he was at least 40 years old at the time of the alleged discrimination; (2) [s]he was subjected to an adverse employment action; (3) [s]he was otherwise qualified for the position; and (4) [s]he was replaced by a younger worker." Pigott, 909 F. Supp. 2d at 965 (quoting Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 521 (6th Cir. 2008)). "This light burden is 'easily met' and 'not onerous.'" Pelcha v. MW Bancorp, Inc., 988 F.3d 318, 326 (6th Cir. 2021) (quoting Willard v. Huntington Ford, Inc., 952 F.3d 795, 808 (6th Cir. 2020)).

Here, Clark was over 40 years old at the relevant time, was terminated, had been performing her job for over five years at the time of her termination (and had been employed by Defendant for approximately fifteen years in total), and Chaney is about 30 years younger than Clark. Nonetheless, Defendant argues that Clark cannot establish a prima *facie case* of age discrimination because (a) Clark cannot meet the "heightened standard required in a reduction in force case"; and (b) the evidence in the record does not support "but-for" causation. (See Doc. No. 21 at 12–16). For the reasons below, the Court finds that Clark has satisfied her *prima facie* burden.

a. <u>Reduction in Force</u>

"[W]hen an employee is terminated as part of a reduction in force, the employee must meet a heightened standard to prove his *prima faci*e case: [h]e must present 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [him] out . . . for discharge for impermissible reasons.'" *Pierson v. Quad/Graphics Printing Corp*., 749 F.3d 530, 537 (6th Cir. 2014) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

"It is important to clarify what constitutes a true work force reduction case. A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." <u>Barnes v. GenCorp Inc.</u>, 896 F.2d 1457, 1465 (6th Cir. 1990); <u>Schoonmaker v. Spartan Graphics Leasing, LLC</u>, 595 F.3d 261, 265 (6th Cir. 2010) (same); *see* <u>Thompson v. Fresh Prods., LLC</u>, 985 F.3d 509, 522 (6th Cir. 2021) ("A RIF occurs when an employer eliminates an employee's position because of business considerations and does not replace that employee after her discharge.").

Defendant argues that Clark cannot meet the heightened standard required in reduction-in-force cases. (<u>See</u> Doc. No. 21 at 12–14). Clark counters that this is not a reduction-in-force case because she was "replaced" rather than "[eli]minated." (<u>See</u> Doc. No. 29 at 9–10). The Court agrees with Clark. Indeed, while the record contains evidence showing that Defendant eliminated managerial positions in the Nashville area as a result of restaurant closures, it also contains

9

evidence showing that Defendant did not eliminate Clark's specific position, *i.e.*, the position of service manager in the Hermitage, TN, restaurant. In the same vein, the record contains sufficient evidence for a reasonable jury to find that Chaney took over Clark's position without performing other duties, as opposed to taking over Clark's duties in addition to her own.

In its Reply, Defendant points to various admissions, including that it closed restaurants, that managers were impacted by these closures, that some of them were transferred to the Hermitage restaurant, that Defendant thought the general manager that took over Chaney's position "gave that location the best chance for success," and that one manager who was on FMLA leave was retained. (Doc. No. 35 at 2). But these facts fall short of showing that another employee was assigned to perform Clark's duties *in addition to other duties*, or that Clark's work was redistributed among other existing employees *already performing related work*. It is material and relevant that Chaney was a general manager and not a service manager prior to filling Clark's position. It is also material and relevant that Chaney stepped down from her duties as general manager upon becoming service manager. As such, the Court finds that the record contains sufficient evidence for a reasonable jury to find that Chaney was reassigned to perform Clark's duties and, thus, that Clark was replaced. Accordingly, the Court finds that a material issue of fact exists as to whether a reduction in force occurred in this case. Therefore, the Court will not grant summary judgment on this basis. See Pierson, 749 F.3d 530, 532 (6th Cir. 2014) (reversing grant of summary judgment "[b]ecause we find evidence in the record to establish a genuine factual dispute regarding whether [the plaintiff's] position was eliminated or whether he was replaced by a younger individual"); Gibson v. Nat'l Seating Co., No. 3:04-CV-574, 2005 WL 2276020, at *9 (E.D. Tenn. Sept. 19, 2005) (denying summary judgment where there was a legitimate factual dispute as to whether a reduction in force occurred).

10

b. Causation

Next, Defendant argues that Clark's claims for age discrimination fail under the "but-for" causation standard. (See Doc. No. 21 at 14–16). Clark does not answer this argument directly but rather argues that the evidence in the record sufficiently establishes a *prima facie* case of age discrimination under McDonnell Douglas. (Doc. No. 29 at 15–16).

"[A]n ADEA plaintiff cannot prove her case by establishing that age was simply a "motivating factor"; instead, the plaintiff has 'the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action.'" Reed v. Am. Cellular, Inc., 39 F. Supp. 3d 951, 960 (M.D. Tenn. 2014) (same) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009). This requires that age be the "determinative reason" for the termination, meaning that it must have had "a determinative influence on the outcome of the employer's decision-making process." Pelcha v. MW Bancorp, Inc., 988 F.3d 318, 324 (6th Cir. 2021) (italics and quotation marks omitted) (citing Scheick v. Tecumseh Pub. Sch., 766 F.3d 523, 529 (6th Cir. 2014), and Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)).[4] The same analysis applies to THRA claims. Pierson, 749 F.3d 530, 536 (6th Cir. 2014) ("We assess age-discrimination claims brought under the THRA using the same analysis as those brought under the ADEA."); Reed, 39 F. Supp. 3d at 960 (same). "So, to defeat summary judgment, [the plaintiff] must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination." Pelcha, 988 F.3d at 324.

---

[4] Quoting an amended and superseded portion of Pelcha, Defendant incorrectly contends that age must be the only reason for the termination. (See Doc. No. 21 at 14 (quoting Pelcha v. MW Bancorp, Inc., 984 F.3d 1199 (6th Cir.), opinion amended and superseded, 988 F.3d 318 (6th Cir. 2021)).

11

As noted above, "[p]laintiffs may show a violation of the ADEA through either direct or circumstantial evidence." Pelcha, 988 F.3d at 324 (citing Scheick v. Tecumseh Pub. Sch., 766 F.3d 523, 529 (6th Cir. 2014)). "Direct evidence 'requires the conclusion that age was the 'but for' cause of the employment decision.'" Goodale v. Elavon, Inc., No. 3:19-CV-409-KAC-DCP, 2022 WL 17573909, at *8 (E.D. Tenn. Dec. 9, 2022) (quoting Scheick v. Tecumseh Pub. Sch., 766 F.3d 523, 530 (6th Cir. 2014)), aff'd, No. 23-5013, 2023 WL 9111441 (6th Cir. Dec. 12, 2023). "[C]ircumstantial evidence requires the factfinder to draw inferences from the evidence presented to conclude that the plaintiff was terminated based on age." Id. (citing Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997)). In Pelcha, the Sixth Circuit found that meeting the prima facie factors together with evidence of ageist comments by a decisionmaker was sufficient to raise a plausible inference of discrimination. See Pelcha, 988 F.3d at 326; see also Obergefell v. Firelands Reg'l Med. Ctr., No. 3:20-CV-2579, 2025 WL 590891, at *15 (N.D. Ohio Feb. 24, 2025) (considering ageist remarks as circumstantial evidence at the prima facie stage). The Sixth Circuit has set forth the following standard to evaluate statements allegedly showing employer bias:

> [1] whether the comments were made by a decision maker or by an agent within the scope of his employment; [2] whether they were related to the decision-making process; [3] whether they were more than merely vague, ambiguous, or isolated remarks; [4] and whether they were proximate in time to the act of termination

(Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir. 1994)). Courts have noted that these factors are most often applied when statements are brought as direct evidence but have also found them "helpful" when evaluating circumstantial evidence and "in the analysis of whether stray remarks are relevant." E.g. Greenfield v. Sears, Roebuck & Co., No. 04-71086, 2006 WL 2927546, at *8 (E.D. Mich. Oct. 12, 2006). The Court will therefore consider these factors.

12

As discussed, the record contains sufficient elements to establish the four *prima facie* elements of age discrimination. Indeed, Clark was in her sixties at the relevant time, was terminated, was experienced at being a service manager, and Chaney is approximately 30 years younger than her. It is also undisputed that other employees made comments about Clark's age, including Chaney. In her deposition, Clark stated that these comments came from "team members" and management, that they "happened all the time," and that "everybody," *i.e.*, "[m]anagement, employees, [and] whoever was around at the time" heard them. (See Doc. No. 23-2 at 70–74). When asked if she believed that Defendant discriminated against her because of her age, Clark answered:

> Again, like team members and, hey, granny, what's going on, when are you going to retire. Management, what's going on, Double ARP, when are you going to retire? Do you have your cane ready? Things of that nature. Again, that was like [the kitchen manager] and [Chaney] and team members."

(Id.). Clark also testified that Chaney made multiple comments "at different times," such as "[y]ou think you can make it around the restaurant without having to use you cane[]?" (Id.). Chaney was the general manager at the time she made the comments. (See id.). Chaney also conducted Clark's first quarterly performance review at issue in this case and delivered the PIP to Clark together with Ash. While Chaney was not formally a decisionmaker, the Court finds her role as Clark's manager and involvement in Clark's performance review relevant. The Court also finds it relevant that management was allegedly aware of the remarks. If the remarks occurred "all the time," they were also frequent and not too remote in time. Overall, while these comments are insufficient to constitute direct evidence of discrimination, they do provide circumstantial support to Clark's claims. Finally, the Court notes that the record contains evidence showing that some of Clark's communication issues were specifically with younger team members, which further supports the theory that Clark's age is a central element of this case.

13

Although this is a close call, the Court finds that, drawing all inferences in Clark's favor, a reasonably jury could conclude by preponderance of the evidence that Clark's age was the "but-for" cause for her termination.

## 2. Legitimate Non-Discriminatory Reason

As explained above, in the second step of the <u>McDonnell Douglas</u> analysis, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its decision. (See <u>supra</u> Section 1). Here, Defendant argues that it terminated Clark because of a reduction in force, *i.e.*, the closure of two restaurants in the Nashville area, as well as poor performance by Clark.[5] (See Doc. No. 21 at 21–23). In response, Clark argues that "this is not a workforce reduction case because Clark was terminated and replaced, *i.e.*, her job was not eliminated.[6] (Doc. No. 29 at 17). In its reply, Defendant counters that Clark admitted that Defendant closed two restaurants, that multiple managers were impacted by the store closures, that the Antioch location's general manager was transferred to the Hermitage location, that the Antioch general manager had been a general manager of the year, and that Defendant believed his transfer to the Hermitage restaurant gave that location the best chance of success. (See Doc. No. 35 at 2 (citing Doc. No. 34 ¶¶ 28, 31–32, 34)). Defendant also argues that whether Clark was "replaced" is only relevant at the *prima facie* stage. (Id. at 4).

---

[5] Defendant does not expressly mention Clark's purported poor performance as an independent reason for Clark's termination. (See Doc. No. 21 at 21–23). However, Defendant mentions that Clark "admits that her performance was lacking" and "compar[es] her performance to Chaney's." (Id. at 22–23). For purposes of ruling on Defendant's Motion, the Court will interpret this argument as attempting to state that the restaurant closures in the Nashville area required Defendant to terminate someone and that Defendant chose Clark because of her performance.

[6] Clark also argues that Defendant's evidence regarding her purported poor performance is based on inadmissible hearsay. (See Doc. No. 29 at 17–18). Because Clark admitted enough facts for the court to rule on this issue without analyzing the hearsay argument, the Court will not do so at this time. (See Doc. No. 34 ¶¶ 28, 31–32, 34)).

14

As discussed above, a genuine issue of material fact exists on whether Clark was replaced, meaning that Clark does not have to make her *prima facie* case under the heightened standard for reduction-in-force cases.  (See supra B).  In Pierson, the Sixth Circuit likewise found at the first step of the McDonnel Douglas analysis that the plaintiff "presented sufficient evidence to create a genuine dispute regarding whether his position was truly eliminated; therefore, he does not need to meet the heightened standard [applicable to reduction-in-force cases] to prove his *prima facie* case."  Pierson, 749 F.3d at 539.  Still, at the second step of the Mcdonnell Douglas analysis, the Sixth Circuit found that "[the defendant] carries its burden by asserting that [the plaintiff's] position was selected for elimination as part of a company-wide reduction in force . . . . Therefore, the burden shifts back to [the plaintiff] to establish that the reason for termination articulated by [the defendant] is pretext for age discrimination."  (Id. at 539).

The Court likewise finds here that Defendant has articulated a legitimate non-discriminatory reason for terminating Clark: the closure of two restaurants, including the one in Antioch, together with a poor performance by Clark.  *See* Id. at 539; Succarde v. Federal Express Corp., 106 F. App'x 335, 339 (6th Cir. 2004) (poor performance is a legitimate, non-discriminatory reason for termination); Wade v. Cavco Indus., Inc., No. 3:22-CV-00386, 2024 WL 1078212, at *3 (M.D. Tenn. Mar. 11, 2024) (same); see also Mynatt v. Lockheed Martin Energy Systems, Inc., 271 F. App'x 470, 477–78 (6th Cir. 2008) ("an employee's evaluation of [her] own performance or qualifications is irrelevant as a matter of law.")).

### 3. Pretext

"Pretext can be shown by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action."  Loyd v. Saint Joseph Mercy Oakland,

15

766 F.3d 580, 590 (6th Cir. 2014); <u>Wheat v. Fifth Third Bank</u>, 785 F.3d 230, 240 (6th Cir. 2015) (same). At summary judgment, a plaintiff meets her burden of establishing pretext by "'produc[ing] evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason.'" <u>Rogers v. Henry Ford Health Sys., 897 F.3d 763, 777 (6th Cir. 2018)</u> (quoting <u>Michael v. Caterpillar Fin. Servs. Corp.</u>, 496 F.3d 584, 597 (6th Cir. 2007)).

Clarks argues that the evidence in the record shows that (a) the reduction in force invoked by Defendant had no basis in fact, and (b) that her poor performance not the actual motivation for the termination.

### a. <u>No Basis in Fact</u>

Repeating her argument from the second step of the <u>McDonnell Douglas</u> analysis, Clark argues that there was no reduction in force because she was replaced, meaning that her position was not eliminated. (<u>See</u> Doc. No. 29 at 19–20). For the reasons stated above, the Court rejects this argument because there is no dispute here that Defendant closed other restaurants in the Nashville area and transferred at least one employee to the Antioch location, regardless of whether this technically constitutes a reduction in force.

Clark also claims that Defendant lied about when it decided to terminate her. (<u>See</u> <u>id.</u> at 20). On this basis, Clark argues that "[b]ecause [Defendant's] explanations regarding the termination, and timing of the termination, are unworthy of credence and is [*sic*] sufficient to create a genuine issue of fact as to pretext." (<u>Id.</u>). The Court agrees that the evidence in the record creates a material issue of fact as to when Defendant decided to terminate Clark, especially because Chaney filled Clark's position before the time Defendant claims to have made the decision. (<u>See</u> Doc. No. 34 ¶¶ 38, 40–41). However, the standard requires Clark to offer evidence regarding the *reason* for the termination, not its *timing*. Therefore, Clark's argument misses the point.

16

b. <u>Stated Reason Versus Actual Motivation</u>

Next, Clark argues that poor performance was not Defendant's actual motivation for terminating her and replacing her with Chaney. (<u>See</u> Doc. No. 29 at 20–21). In support of this contention, Clark points to the timing of her second leave request and notes that, less than two weeks before her second leave, "Ash began steps to place Clark on a [PIP] without any documented performance issues, (completely ignoring [Defendant's] progressive disciplinary policy), asked [Chaney] to write notes to justify the [PIP] [nine days before Clark's second leave], and then presented Clark with the PIP . . . the day before she was to start her leave." (<u>Id.</u> at 20 (footnote omitted)). Clark further notes that "Ash [instead of Chaney, who was the general manager] then gave Clark a low 2nd [quarterly performance review citing the fact that she was on leave of absence and had been given the [PIP] before she took leave. The [PIP] and the low performance evaluation were then used as the . . . basis to terminate Clark and replace her with Chaney." (<u>Id.</u>). In sum, Clark argues that Defendant placed her on the PIP in violation of its own policies and manufactured a poor performance review to justify terminating Clark and replacing her with Chaney, who was less experienced but younger.

This is where the rubber meets the road in this case. There is no dispute that Clark's second quarterly review was poor; nor that Defendant then used this review and the PIP as a basis to terminate Clark. The question is whether the review and PIP were justified and whether Defendant relied on it them good faith when it decided to terminate Clark. The record contains contradictory evidence regarding Clark's performance. For instance, Clark testified in her deposition that her performance was "very good" and that the deaths in her family did not impact her performance. (<u>See</u> Doc. No. 32-1 at 10, 13). On the other hand, Chaney testified about "issues" and "incidents" regarding Clark's performance around the same time and mentioned a "sit-down" with Cark

17

regarding these issues. (See Doc. No. 30-4 at 10–13). Clark also admitted to some performance issues and testified that she had been on "autopilot" between October 2022 and January 2023. (See Doc. No. 21-1 at 13–14). The parties also dispute whether the PIP was compatible with Defendant's disciplinary policy. Courts have found an employer's noncompliance with its disciplinary policies relevant to analyzing pretext. See, e.g., Lilly v. Norfolk S. Corp., 556 F. Supp. 3d 802, 816 (N.D. Ohio 2021) ("An employer's failure to follow its own disciplinary policies may be evidence of pretext and animus."); Beair v. Summit Polymers, 2013 WL 4099196, at *13 (E.D. Ky. Aug. 13, 2013). The Court therefore finds that, in light most favorable to Clark, the record raises material issue of fact as to whether the PIP and second performance review were justified and, thus, whether the Defendant's reliance thereon was pretextual. See Lilly, 556 F. Supp. 3d at 816 (if discipline was unjustified, termination based upon such discipline was also unjustified).

Overall, while this is somewhat a close call, the Court finds that a reasonable jury could conclude the closure of two restaurants in the Nashville area as well as Clark's performance were insufficient to justify her termination. Accordingly, the Court finds that Defendant has failed to establish it is entitled to summary judgment on the age-discrimination claims.

C. FMLA Retaliation

In order to establish a *prima facie* case of FMLA retaliation, Clark must show that: "(1) she was engaged in an activity protected by the FMLA; (2) [Defendant] knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, [Defendant] took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012) (citing Killian v. Yorozu Auto. Tennessee, Inc., 454

18

F.3d 549, 556 (6th Cir. 2006)); Alexander v. Kellogg USA, Inc., 674 F. App'x 496, 501 (6th Cir. 2017) (same). "Where, as here, the employer claims that 'the dismissal would have occurred regardless of the employee's request for . . . FMLA leave,' the employee must convince the trier of fact otherwise." Gipson v. Vought Aircraft Indus., Inc., 387 F. App'x 548, 557 (6th Cir. 2010) (citing Moorer v. Baptist Mem'l Health Care Sys., 398 F.3d 469, 488–89 (6th Cir. 2005)).

The Sixth Circuit has found that "where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004) (collecting cases), overruled on other grounds, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). Opinions are somewhat inconsistent on whether temporal proximity, without further evidence, suffices at the *prima facie* stage. Compare Parkhurst v. Am. Healthways Servs., LLC, 700 F. App'x 445, 451 (6th Cir. 2017) (temporal proximity, alone, is not sufficient evidence of discrimination); Parnell v. West, 1997 WL 271751, at *2 114 F.3d 1188 (6th Cir. 1997) ("[T]emporal proximity alone will not support an inference of [the existence of the fourth element of an indirect-evidence *prima facie* case of] retaliatory discrimination when there is no other compelling evidence"), with Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 284 (6th Cir. 2012) (temporal proximity was enough to meet the prima facie standard at the first step of the McDonnell Douglas analysis); Clark v. Walgreen Co., 424 F. App'x 467, 473 (6th Cir. 2011) (same); Nguyen v. City of Cleveland, 229 F.3d 559, 567 (6th Cir. 2000) ("there may be circumstances where evidence of temporal proximity alone would be sufficient").

Here, there is no dispute that Clark engaged in protected activity when she took her FMLA leaves. There is also no dispute that Defendant knew that Clark was exercising her right under the FMLA when she took the leaves. Further, there is no dispute that Defendant subjected Clark to

adverse employment actions, *i.e.*, the termination and the PIP,[7] after it became aware of her leaves. Defendant, however, argues that the evidence does not support a *prima facie* case of FMLA retaliation and, specifically, that Clark cannot establish causation. (See Doc. No. 21 at 18). In support of its argument, Defendant notes that another manager impacted by the closure of two of Defendant's restaurants in the Nashville area also took a FMLA leave around the same time but was not terminated. (See id. at 18–19). Defendant also argues that the sole temporal proximity between Clark's notification of her second FMLA leave and the PIP and termination is, without more, insufficient. Plaintiff counters that the temporal proximity alone suffices and notes, *inter alia*, that (i) there were no documented performance issues leading up to the PIP; (ii) Clark's second performance evaluation mentions Clark's leave of absence; (iii) the delivery of the PIP to Clark occurred the day before her second leave; and (iv) Defendant relied on the PIP and second evaluation to justify the termination. (See Doc. No. 14–15).

The Court finds that the temporal proximity between Clark's request for a second leave and the PIP, less than a month, is close enough to support an inference of retaliation. See Judge v. Landscape Forms, Inc., 592 F. App'x 403, 409 (6th Cir. 2014) ("We have found sufficient evidence of a causal connection where the time between when the employee's leave expired or the employee requested leave and the employee's termination was two to three months." (collecting cases)); Parnell, 1997 WL 271751 at 1188 (noting that "previous cases that have permitted a prima *facie case* to be made based on the proximity of time have all been short periods of time, usually

---

[7] There is no dispute that the termination was an adverse employment action, and Defendant at least implies that the PIP was an adverse employment action as well. (See Doc. No. 21 at 18 (arguing that there is a lack of causation between Clark's second FMLA leave and the "PIP *or* termination") (emphasis added)).

less than six months"). As for further evidence, to the extent it is required, the Court finds that Clark has pointed to sufficient additional elements in the record to satisfy her burden.

Finally, that another manager who Defendant did not terminate had also taken FMLA leave is relevant (see, e.g., Jackson v. Old Dominion Freight Line, No. 2:16-CV-00977, 2018 WL 1521764, at *7 (S.D. Ohio Mar. 28, 2018) (taking into account that other employees who took FMLA leave were not terminated) but not conclusive at this stage because the record supports the inference that Clark's leaves were especially burdensome. Indeed, Clark took two separate leaves, and Chaney testified she thought Clark's leaves negatively impacted the restaurant's and her own performance. Thus, Clark's situation is factually distinguishable from the other employee who took FMLA leave. There is also no mention that Chaney, the employee who ultimately replaced Clark, took a FMLA leave.

Accordingly, the Court will not grant summary judgment on the FMLA retaliation claim.[8]

D. FMLA Interference

"To prevail on her interference claim . . . [Clark] must establish that [Defendant] interfered with a FMLA right to medical leave or to reinstatement following FMLA leave. Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004) (citing Arban v. W. Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003)); see Baldwin-Kaba v. InfoCision, Inc., No. 5:18-CV-2478, 2019 WL 1115890, at *2 (N.D. Ohio Mar. 11, 2019) ("the employer violates the act if it interferes with an FMLA-created right to medical leave or reinstatement after a qualified leave"). Clark must establish that "(1) she was an eligible employee as defined under the FMLA; (2) [Defendant] was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA;

---

[8] Plaintiff only makes arguments pertaining to the first step of McDonnell Douglas in relation to the FMLA retaliation claim. In any event, the Court's analysis of the other two steps in its age-discrimination analysis is equally applicable here. (See supra Section B).

(4) she gave [Defendant] notice of her intention to take FMLA leave; and (5) [Defendant] denied FMLA benefits to which she was entitled." Novak v. MetroHealth Med. Ctr., 503 F.3d 572, 578 (6th Cir. 2007) (citing Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005)). "An employee lawfully may be dismissed, preventing [her] from exercising [her] statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Arban 345 F.3d at 401 (citing Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1262 (10th Cir. 1998)).

Only the fifth element is in dispute here. The parties also agree that Clark received her entire leave, meaning that only her right to reinstatement is at issue. (See Doc. No. 29 at 12–13; Doc. No. 21 at 20). Defendant argues it terminated Clark while on leave for reasons unrelated to the leave, *i.e.*, a reduction in force. (Doc. No. 21 at 21). As discussed above (see supra Section B), however, a material issue of fact exists as to why Defendant terminated Clark. And while the parties dispute when Defendant decided to terminate Clark (see Doc. No. 34 ¶ 36; Doc. No. 36 ¶ 33), the timing here, under at least Clark's version of the events, could lead a reasonable fact finder to infer that Defendant would not have terminated Clark absent her second FMLA leave. Indeed, Clark received her PIP a day before her second leave and found Chaney in her position upon her return. As the Sixth and Seventh Circuits have observed:

> [T]he timing of [a] decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware).

Arban, 345 F.3d at 402 (quoting Kohls v. Beverly Enters. Wisconsin, Inc., 259 F.3d 799, 806 (7th Cir. 2001)). The Court finds this reasoning applicable here.

Next, without citing to authority, Defendant argues that Clark has failed to establish a *prima facie* case of interference because the interference claim is based on the same facts as her retaliation claim. (See Doc. No. 21 at 20). To the extent Defendant argues that the claims for retaliation and interference are duplicative, courts are split on how to approach this situation. See Merendo v. Ohio Gastroenterology Grp., Inc., No. 2:17-CV-817, 2019 WL 955132, at *19–20 (S.D. Ohio Feb. 27, 2019) (collecting cases). However, the Sixth Circuit has accepted the idea that the denial of benefits can also constitute retaliation. See Groening v. Glen Lake Cmty. Sch., 884 F.3d 626, 632 (6th Cir. 2018) (citing Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007)); Bradley v. Mary Rutan Hosp. Assoc., 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004). Without further argument or supporting authority, the Court must therefore reject this argument.

The Court will not grant summary judgment on the FMLA interference claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 20) will be granted in part and denied in part. The Court will grant summary judgment in favor of Defendant on the ADEA and THRA disability discrimination claims. All other claims will remain pending.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE